[Civ. No. 26972. Second Dist., Div. Four. Aug. 8, 1963.]

RE-BAR CONTRACTORS, INC., Plaintiff and Respondent, v. THE CITY OF LOS ANGELES et al., Defendants and Appellants.

Smithers, Good & Potter, Smithers, Good, Potter, Wildman & Gregory and Clyde H. Potter, Jr., for Defendants and Appellants.

Lewis B. Kean for Plaintiff and Respondent.

BURKE, P. J.—Plaintiff, Re-Bar Contractors, Inc., as materialman, furnished steel bars for Massie, a subcontractor for Snyder, the general contractor performing a contract for the Board of Recreation and Park Commissioners of the City of Los Angeles for the construction of a swimming pool and bathhouse on municipal property. Snyder subcontracted with Massie for the placement of the steel reinforcement bars for the improvements and Massie, by written agreement, con-

tracted with plaintiff, Re-Bar Contractors, Inc., for the steel material to be supplied. The construction proceeded and progress payments were made to Snyder. Plaintiff delivered the necessary steel and upon nonpayment of the full amount due under its agreement with Massie filed a valid stop notice with the city. Defendant Pacific Indemnity Co. filed a release bond undertaking to pay any sum which plaintiff might recover by reason of the claims asserted in the stop notice.

On or about March 9, 1959, Snyder delivered a check to Massie in the amount of $2,747 payable to Massie and plaintiff, Re-Bar Contractors, Inc. The purpose of such joint payment was to insure that the plaintiff would receive some payment on its account with Massie. Massie attempted to present the check for payment circumventing plaintiff and Snyder stopped payment on the check. On March 16, 1959, Snyder issued a check for $2,359.50 made payable to Massie, plaintiff and the Bank of America. It was endorsed by all parties, deposited in plaintiff's account, of which plaintiff retained by mutual agreement of the payees the sum of $1,500, paying the balance to Massie. On April 6, 1959, Snyder issued another check in the sum of $1,098.30, payable to the same three payees who in turn agreed that plaintiff be paid $652 out of such funds. Notwithstanding this agreement plaintiff allowed Massie to take the full proceeds of this check.

The court found that plaintiff had supplied materials to the job of a value of $4,661.28. By virtue of the checks paid, Snyder was credited with the $1,500 and $652 he had directed be paid plaintiff out of the joint checks, and gave plaintiff judgment for the balance of its account in the sum of $2,-509.28. Defendants appeal from this judgment.

The principal contention of defendants on appeal is that the payment to one of several joint payees under a contract or negotiable instrument discharges the obligation. They further assert insufficiency of evidence to support certain findings, and endeavor to invoke the maxim that "where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer."

Ample authorities exist, and several are quoted by defendants, to support their first contention, but, as plaintiff properly differentiates the case, we are not here concerned with any "joint obligations." Contractor Snyder had no contractual connection with plaintiff. He owed no obligation to plaintiff

and is not sued by plaintiff in this action. No evidence establishes any joint interest, association or agreement between plaintiff and Massie, the subcontractor. By issuing the joint checks Snyder apparently attempted to insure that the funds would be properly routed so that unpaid materialman claims would not accrue and become lienable claims against the project.

Defendants' position is substantially described in *Cober* v. *Connolly*, 20 Cal.2d 741, 745 [128 P.2d 519, 142 A.L.R. 367], which states: " 'Since each of several joint obligees is interested in the entire claim, he has the power to discharge the entire claim either by release or by accord and satisfaction, and so a payment or other performance of the whole obligation to one obligee discharges it; and a tender to one is legally a tender to all.' " But in this case plaintiff was not a joint obligee and had no interest in the "entire claim," that is, Massie's claim for payment from contractor Snyder. Plaintiff had no legally enforceable rights against Snyder, but only against subcontractor Massie. In the event of Massie's default Snyder had the right to proceed as he did under the mechanic's lien statutes.

 The trial court applied a credit in the amount of $652 in favor of Snyder and against plaintiff because Snyder had directed that such amount be withheld by plaintiff from the second check to the three named payees but which plaintiff by its own endorsement had released in its entirety to Massie. The authorities amply support such application and plaintiff is estopped from claiming nonpayment of such amount. "If it may reasonably be said . . . that a material dealer . . . could be so naive as to fail to understand the purpose and intention of an owner in making checks payable jointly to it and his subcontractor, [the materialman] was at least under the duty of inquiring . . . as to his intention with respect to the application of the funds represented by the checks. This [the materialman] failed to do, and it may not now be heard to say that respondent should bear the loss which it sustained as a result of its own imprudence." (*Westwood Bldg. Materials Co.* v. *Valdez*, 158 Cal.App.2d 107, 113 [322 P.2d 79].) (See also Code Civ. Proc., § 1190.1; *Petaluma Building Materials, Inc.* v. *Foremost Properties, Inc.*, 180 Cal.App.2d 83 [4 Cal.Rptr. 268]; *Edwards* v. *Curry*, 152 Cal.App.2d 726 [313 P.2d 613].)

Defendants' other contentions regarding insufficiency of

evidence and application of the maxim expressed in Civil Code section 3543 have been reviewed. They do not warrant any assignment of error. The record discloses substantial evidence to support the trial court's findings, conclusions and judgment.

The judgment is affirmed.

Jefferson, J., and Kingsley, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 1, 1963.