[Civ. No. 39650. Second Dist., Div. Four. Nov. 14, 1972.]

FELDMAN CONSTRUCTION COMPANY, Plaintiff, Cross-defendant and Respondent, v.
UNION BANK, Defendant, Cross-complainant and Respondent;
TRANS-WORLD BANK, Cross-defendant, Cross-complainant and Appellant.

## COUNSEL

Robert H. Wallerstein and Fischmann & Wallerstein for Cross-defendant and Appellant.

Donovan & Somers, Richard B. Somers and Ernest E. Gould for Defendant, Cross-complainant and Respondent.

Manns & Manns and George Manns for Plaintiff and Respondent.

## OPINION

**JEFFERSON, Acting P. J.**—Plaintiff Feldman Construction Company sued its depository bank, Union Bank, for the wrongful payment of a

check. Union cross-complained for indemnity against Trans-World Bank. Trans-World in turn cross-complained against the plaintiff and Union Bank for money owed and for negligence.

Judgment was entered in the court below for the plaintiff against Union Bank. Judgment also went against Trans-World on its cross-complaint. Union was awarded indemnity against Trans-World. Union does not appeal; Trans-World is the sole appellant herein.

The facts giving rise to this controversy are: On March 20, 1968, William Feldman, a partner of plaintiff, drew a check on behalf of the partnership directing its drawee bank, Union, to pay $15,000 to the order of:

> "Interstate Steel Corp.
> General Pipe & Supply."

The check was delivered to Mr. Sullivan, president of Interstate Steel, a subcontractor of the Feldman Construction Company. On the back of the check was written the following: "Endorsement of this check acknowledges payment as of this date all material and labor at A.I.C. Bldg. 8060 Florence Ave. Downey, Calif." On March 21, 1968, the check was deposited by Interstate Steel in its account at Trans-World Bank. It bore the endorsement of Interstate Steel and of its president, Sullivan. There was no endorsement by General Pipe & Supply Company. Trans-World, as the collecting bank, endorsed the check "P.E.G." (prior endorsement guaranteed) and forwarded it for payment to Union; Union paid the check and charged plaintiff's account. Trans-World thereafter allowed Interstate Steel to draw on the funds collected. Neither bank noticed the missing endorsement.

On April 11, 1968, shortly after receiving its monthly bank statement with cancelled checks, including the one in question here, plaintiff Feldman notified Union that the check had been cashed without the endorsement of General Pipe. Union immediately notified Trans-World, requesting that it either obtain the missing endorsement or remit the funds paid. At this point, Interstate Steel had withdrawn most of the funds credited to its account at Trans-World, and later became insolvent. Trans-World did not remit to Union, nor did it obtain the endorsement of General Pipe.

■ Trans-World Bank contends that the check in question was payable to alternative payees, and thus could be properly negotiated and discharged on one endorsement. We find there was sufficient evidence to support the trial court's findings of fact and conclusions of law that the check was payable jointly to two payees and required the endorsement of both. The two payees were identified on the face of the check as separate entities,

one by "Corp." and one by "Co.," the one name placed on top of the other on separate lines. The absence of "and" or "or" is not controlling.

In addition, the endorsement on the back of the check made it clear what type of transaction was in progress; it was payment by a general contractor to a subcontractor and the materialman who had supplied the subcontractor. Although direct evidence was not taken below concerning ordinary business practices in the building industry, the notation on the check itself provides evidence of the drawer's intent to pay two parties jointly (*Harry H. White Lbr. Co.* v. *Crocker-Citizens Nat. Bank*, 253 Cal. App.2d 368 [61 Cal.Rptr. 381]); he was discharging a debt owed to the subcontractor while protecting the company against the lien of an unpaid materialman. (*Re-Bar Contractors, Inc.* v. *City of Los Angeles*, 219 Cal. App.2d 134 [32 Cal.Rptr. 607]; *Westwood Bldg. Materials Co.* v. *Valdez*, 158 Cal.App.2d 107 [322 P.2d 79].) California Uniform Commercial Code section 3116 provides, in part, that "An instrument payable to the order of two or more persons . . . (b) if *not* in the alternative is payable to all of them and may be negotiated, discharged or enforced *only by all of them*." (Italics added.)

■ Trans-World contends that the check was drawn negligently by the drawer; that the drawer created an ambiguity and therefore should take the loss. The evidence supports the finding of the trial court that the drawer was not negligent. William Feldman, a partner of the plaintiff-drawer, testified that the check was prepared by a new employee, a book-keeper; that he instructed her when a check was to be made out to two payees; and that the check as drawn was reviewed and signed by him. Thus, the instant case is unlike those involving a question of possible negligence on the part of the drawer due to inadequate supervision of employees. When the check was returned without the required endorsement, plaintiff immediately notified Union. (*Basch* v. *Bank of America*, 22 Cal.2d 316 [139 P.2d 1]; see also *Atlas Vegetable Exchange, Inc.* v. *Bank of America*, 10 Cal.App.3d 868 [89 Cal.Rptr. 274].)

■ It is not disputed that Union Bank, as found by the trial court, did not use ordinary care by making payment on the improperly endorsed check, and is liable to the plaintiff, its depositor. (*Hensley-Johnson* v. *Citizens National Bank*, 122 Cal.App.2d 22 [264 P.2d 973].) Evidence had been admitted in the trial court against Union Bank, only, showing that plaintiff had on earlier occasions made out checks in the manner of the check in question here, and that they always had been negotiated by two endorsements rather than one. Furthermore, the cross-examination of Union Bank employee Neill resulted in her admission that she would have not

paid the check in question without making further inquiry. The measure of damages was the amount by which the bank improperly debited plaintiff's account. (*Allied Concord etc. Corp.* v. *Bank of America,* 275 Cal. App.2d 1 [80 Cal.Rptr. 622].)

Trans-World asserts that the negligence of Union Bank, in failing to notice the missing endorsement, should operate as a bar to Union's action for indemnity from Trans-World. The question is: which bank should bear the loss, the collecting bank or the drawee bank, when both have been negligent in the collection process?

Union's action for indemnity was based on Trans-World's guarantee of prior endorsements, and its breach of the warranties made. (Com. Code, § 4207, subds. (2) and (3).)[1] Section 4207, subdivision (3), also states that "Damages for breach of such warranties or engagement to honor shall not exceed the consideration received by the customer or collecting bank responsible plus finance charges and expenses related to the item, if any."

 The section cited sets forth the general rule that the collecting bank of an instrument is liable on endorsements to banks further down in the chain of payment. (5B Michie on Banks and Banking (1971 Cum.Supp.). The theory is that the first bank in the chain has a duty to make certain all endorsements are valid; banks subsequently taking the paper have a right to rely on the forwarding bank. The question presented is whether the section set forth in the footnote, contained in the Commercial Code, applies to a transaction where the validity of an endorsement is not in issue but the endorsement is missing. We conclude that the warranties contained in section 4207 do apply in this situation.

There does not appear to be a controlling case in California concerning this point. The problem of the legal effect of a missing endorsement has

---

[1]Section 4207: "[Warranties of Customer and Collecting Bank on Transfer or Presentment of Items; Time for Claims.]

(2) Each customer and collecting bank who transfers an item and receives a settlement or other consideration for it warrants to his transferee and to any subsequent collecting bank who takes the item in good faith that
 (a) He has good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title and the transfer is otherwise rightful; and
 (b) All signatures are genuine or authorized; and
 (c) The item has not been materially altered; and
 (d) No defense of any party is good against him; and
 (e) He has no knowledge of any insolvency proceeding instituted with respect to the maker or acceptor or the drawer of an unaccepted item. . . .
 (3) The warranties and the engagement to honor set forth in the two preceding subdivisions arise notwithstanding the absence of indorsement or words of guaranty or warranty in the transfer or presentment and a collecting bank remains liable for their breach despite remittance to its transferor. . . ."

been considered in other jurisdictions. The transactions involved the use of "P.E.G." by the forwarding banks; the cases hold that the warranty protection extends to subsequent banks in the collection chain when an endorsement is missing.[2] The cases also hold that the negligence of the drawee bank is not a bar to recovery.[3] In California, Commercial Code section 4207, subdivision (3), provides for warranties even when the words "prior endorsement guaranteed" are not used by the forwarding bank when it transfers an item.

■ We hold that Commercial Code section 4207 applies to missing endorsements, even in the absence of "P.E.G." by the collecting bank, and that the negligence of the drawee bank is not a bar to recovery on the statutory guarantees.

■ Trans-World further contends that it was entitled to a set-off, as the transferee of Interstate Steel, which was improperly disallowed by the trial court. The record discloses that the trial judge stated there was a probability of such a set-off, but no effort was made by the cross-complainant to pursue the matter, although it had ample opportunity to do so.

■ The cross-complainant argues that the plaintiff did not offer sufficient evidence to establish damages. We do not agree; testimony was given that Union debited its depositor's account improperly and had at no time returned the funds to its account. In addition, William Feldman testified that plaintiff issued a check for $17,184.15 to Interstate Steel and General Pipe approximately two months after the issuance of the check in question here and that plaintiff had obtained a waiver of lien from General Pipe.

■ Finally, Trans-World contends that its liability on the instrument in question was discharged when it made payment to Interstate Steel, and cites Commercial Code section 3603. That section provides that liability on a negotiable instrument is discharged by payment to a holder. When a check is made payable to two payees jointly, only proper negotiation, i.e., endorsement by both, results in the payment contemplated by that section. Interstate Steel could not negotiate without General Pipe, and

---

[2] *Insurance Co. of North America* v. *Atlas Supply Co.*, 121 Ga.App. 1 [172 S.E.2d 632]; *Roswell Bank* v. *Citizens & Southern De Kalb Bank*, 104 Ga.App. 291 [121 S.E.2d 706]; *U.S. Fidelity & Guaranty Co.* v. *Peoples National Bank*, 24 Ill.App.2d 275 [164 N.E.2d 497].

[3] Cases cited *supra*, footnote 2; in *American National Bank of Denver* v. *First National Bank*, 130 Colo. 557 [277 P.2d 951], the court allowed recovery by the drawee-bank on the theory of quasi-contractual liability, i.e., money paid by mistake. The case cited by cross-complainant, *Rembrandt Electronics* v. *Chase Manhattan Bank*, 51 Misc.2d 745 [273 N.Y.S.2d 868], is distinguishable on its facts.

when it transferred the instrument to Trans-World, Trans-World only received such rights as its transferor had. (Com. Code, §§ 3201, 3202.) Trans-World's credit to Interstate did not operate as a discharge of the instrument.

The judgment is affirmed.

Kingsley, J., and Dunn, J., concurred.