BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, a National Banking Association, Plaintiff,

v.

ALLSTATE INSURANCE COMPANY, an Illinois corporation; Allstate Property and Casualty Insurance Company, an Illinois corporation, Defendants.

No. CV 97–9190 DDP (VAPx).

United States District Court, C.D. California.

Sept. 1, 1998.

Robert Louis Fisher, Barton Klugman & Oetting, Los Angeles, CA, for Plaintiff.

Richard B. Wolf, Elise D. Klein, Paul Y. Lee, Solveig K. Bassham, Lewis D'Amato Brisbois & Bisgaard, Los Angeles, CA, for Defendants.

**ORDER GRANTING DEFENDANTS ALLSTATE INSURANCE COMPANY'S AND ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION'S MOTION FOR SUMMARY JUDGMENT**

PREGERSON, District Judge.

This matter comes before the Court on the motion for summary judgment brought by Defendants Allstate Insurance Company and Allstate Property and Casualty Insurance Company (collectively "Allstate") and the motion for summary judgment brought by Plaintiff Bank of America National Trust and Savings Association ("Bank of America"). Oral argument was heard on August 10, 1998. After consideration of the parties' oral and written arguments, the Court grants Allstate's motion for summary judgment and denies Bank of America's motion for summary judgment.

### BACKGROUND

Chuk N. and Rosa C. Tang (the "Tangs") owned rental property in which Bank of America had a security interest (the "proper-

ty"). The property was insured by Allstate. The insurance policy had a Lender's Loss Endorsement that provided that any loss or damage under the policy would be paid to Bank of America.

On November 21, 1993, the property was damaged by fire. Allstate investigated and found that the fire was covered by its policy. Therefore, on January 18, 1995, Allstate issued a draft payable as follows:

CHUK N. TANG & ROSA C. TANG, HWJT

BANK OF AMERICA

PO BX 5696

DIAMOND BAR CA 91765-7696

Allstate delivered the check to the Tangs. The check was presented to Coast Federal, which paid on the check. The parties do not dispute that Bank of America's endorsement on the check was forged. Bank of America was not informed of the fire or the payment under the policy and did not receive any of the proceeds from this check.

In addition to this check, Allstate issued two other settlement checks in connection with this fire. First, it issued a check to Cal West Construction and Chuk N. Tang for work done on the property. Bank of America concedes that this check was properly payable to Cal West Construction and does not contend that it is entitled to any of the proceeds. Allstate also issued a draft in the amount of $12,350, payable to the Tangs for lost rents on the property.

Although the date that Bank of America learned of the fire is unclear, there is some evidence that Bank of America had learned of the fire by Spring of 1994. On April 21, 1994, Bank of America recorded a notice of default on the property. On July 12, 1994, Rosa Tang advised Bank of America that she was working with Allstate to settle the claim regarding the fire. On January 18, 1995, Allstate issued the draft written out to the Tangs and Bank of America that is the primary issue in this lawsuit.

In the meantime, Bank of America referred the claim to its insurance department. On two occasions, Bank of America postponed the foreclosure sale of the property so that it could follow up on its insurance claim before foreclosing on the property. Bank of America's employees and Allstate's employ-

ees had several conversations about losses on the property beginning on April 21, 1994.

In April 1997, Kirk Schumacher ("Schumacher"), in-house counsel for Bank of America, contacted Allstate's counsel, Bruce Dennison ("Dennison"), regarding this dispute. The parties have presented differing versions of the conversations that took place between Schumacher and Dennison. Schumacher has declared that Dennison requested that Bank of America not file suit and that they work together to resolve this problem. Schumacher has also declared that Allstate asked Bank of America to be patient while Allstate pursued the Tangs, the depository bank (Coast Federal), and the paying bank. Schumacher also indicated that, despite repeated requests by Bank of America employees, Allstate did not send a copy of the insurance policy to Bank of America. Dennison has declared that, although he encouraged Schumacher to work with him in pursuing Coast Federal, he "made no oral or written statement, implicitly or explicitly, requesting that Bank of America withhold or delay the filing [of] a lawsuit against Allstate."

In April 1997, Allstate attempted to recover the funds from Coast Federal. In so doing, Allstate submitted the endorsed check to Coast Federal. Coast Federal refused Allstate's claim, indicating:

> As between the Tangs and Bank of America, the instrument is ambiguous as to whether it is payable "alternatively" or "not alternatively" as described under Section 3[-]110(d) of the California Uniform Commercial Code. Further, the instrument was properly negotiated by the Tangs alone.

Allstate again sought payment from Coast Federal, this time contending that the Tangs' signatures were forged. During this period, up through October 1997, Allstate requested that Bank of America not file suit. On November 7, 1997, Bank of America filed its complaint.

### DISCUSSION

#### A. *Legal Standard for Motion for Summary Judgment*

Summary judgment is appropriate where "there is no genuine issue as to any material

fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, the "mere existence of a scintilla of evidence" in support of the non-moving party's claim is insufficient to defeat summary judgment. *Id.* at 252, 106 S.Ct. 2505. In determining a motion for summary judgment, all reasonable inferences from the evidence must be drawn in favor of the non-moving party. *See id.* at 242, 106 S.Ct. 2505.

## B. *Allstate's Motion for Summary Judgment*

Allstate argues that it is entitled to summary judgment because Bank of America did not file this action within the applicable statute of limitations. Alternatively, Allstate argues that it is entitled to summary judgment because the check in question was properly payable jointly to the Tangs and Bank of America, and delivered to the Tangs, who were acting as Bank of America's agents. Additionally, Allstate argues that because it acted reasonably and did not breach any duties under the insurance policy, it is entitled to summary judgment as to Bank of America's claims for breach of the implied covenant of good faith and fair dealing.

### 1. *Statute of Limitations*

Bank of America's complaint was filed on November 7, 1997. Allstate argues that this action is barred by the statute of limitations because the complaint was filed more than one year from the time that Bank of America knew or should have known of its loss.

#### a. *Does the one-year statute in the policy apply?*

The Tangs' insurance policy contains a provision setting a one-year statute of limitations, providing:

Any suit or action must be brought within one year from the date of loss.

### (1) *Applicable law*

It is well settled that a one-year statute of limitations is considered to be reasonable in California. *See Prudential–LMI Comm. Ins. v. Superior Court*, 51 Cal.3d 674, 274 Cal.Rptr. 387, 798 P.2d 1230, 1236 (Cal.1990). Further, the one-year statute contained in the policy at issue has been adopted by the California Legislature as a provision in its form fire insurance policy. *See* Cal.Ins.Code § 2071 (West 1993) ("No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within 12 months next after inception of the loss").

■ Bank of America argues that a statute of limitations contained in an insurance policy do not apply to bad faith actions. While California courts have consistently held that a policy's statute of limitations applies to all claims under the policy, courts are split as to whether the policy's limitations provisions apply to bad faith actions. *See Frazier v. Metropolitan Life Ins. Co.*, 169 Cal.App.3d 90, 214 Cal.Rptr. 883, 890 (Cal.Ct. App.1985) *but see Prieto v. State Farm Fire & Cas. Co.*, 225 Cal.App.3d 1188, 275 Cal. Rptr. 362, 365–66 (Cal.Ct.App.1990). Some courts have held that the limitations period does not apply to claims based on breach of the implied covenant of good faith and fair dealing. These courts have reasoned that the duty of good faith and fair dealing "is not strictly a contractual obligation." *Frazier*, 214 Cal.Rptr. at 891 (quoting *Murphy v. Allstate Ins. Co.*, 83 Cal.App.3d 38, 147 Cal. Rptr. 565, 574 (Cal.Ct.App.1978). Therefore, courts have noted that

> "... there is a significant difference between 'arising out of the contractual relationship' and 'on the policy.' In a broad sense, all of plaintiffs' alleged causes of action may be said to 'arise out of the contractual relationship' but as we have seen, they are not actions 'on the policy.' ..." Hence the policy time limitation, even if reasonable, does not bar this action based upon the hybrid contractual nature of the implied covenant of good faith and fair dealing.

*Frazier*, 214 Cal.Rptr. at 891 (quoting *Murphy*, 147 Cal.Rptr. at 574).

Other courts have taken the view that the statute of limitations in the policy applies to a claim for breach of the implied covenant of good faith and fair dealing when the "bad faith" claimed stems from claims mishandling. *See Velasquez v. Truck Ins. Exch.*, 1 Cal.App.4th 712, 5 Cal.Rptr.2d 1, 3–5 (Cal.Ct. App.1991). Based upon this rule, courts have allowed bad faith claims for a "bad faith" refusal to pay on a claim, and a "bad faith" misrepresentation of the scope of the policy, reasoning that these claims are fundamentally based on the policy. *See Abari v. State Farm Fire & Cas. Co.*, 205 Cal.App.3d 530, 252 Cal.Rptr. 565, 568 (Cal.Ct.App.1988); *Lawrence v. Western Mutual Ins. Co.*, 204 Cal.App.3d 565, 251 Cal.Rptr. 319, 324–25 (Cal.Ct.App.1988).

A third group of cases takes the view that the statute of limitations on the policy applies to all "bad faith" actions. *See Prieto*, 275 Cal.Rptr. at 366. For example, the *Prieto* court held that a bad faith cause of action based on the failure to pay benefits is governed by the one-year statute of limitations prescribed by section 2071 for actions on the policy. *Id.* The *Prieto* court found support for this holding in the California Supreme Court's approval of courts that had applied a policy's limitations period to actions for bad faith. *Id.* (citing *Prudential–LMI*, 274 Cal. Rptr. 387, 798 P.2d at 1241–42).

The Court finds that the view enunciated by *Prieto* correctly states California law. *See Velasquez*, 5 Cal.Rptr.2d at 3–4 n. 4 (noting that California Supreme Court directed a court of appeals to. reconsider its holding that a policy's limitations clause does not bar a bad faith action). Therefore, the Court finds that the one-year statute of limitations applies to actions on the policy, whether they are based on contract or on the implied covenant of good faith and fair dealing.

### (2) *Application to Bank of America's claims*

■ Bank of America argues that as a third party beneficiary to the insurance contract, it is not bound by the policy's limitations provision.[1]

■ The Court finds that Bank of America's claims arise out of the insurance policy and that the policy's limitations provision therefore applies. The policy itself specifies that its provisions will apply to mortgagees.[2] Further, Bank of America's complaint states claims that are based on the policy. Its first cause of action is a breach of contract claim, alleging that Allstate paid over the proceeds to the Tangs in violation of its obligations under the Lender's Loss Payable Endorsement in the policy. In the first cause of action, Bank of America further alleges that Allstate

breached their obligation under THE IN-SURANCE POLICY in the following man-

---

**1.** Bank of America cites *Olds v. General Accident Fire & Life Assurance Corp.*, 67 Cal.App.2d 812, 155 P.2d 676 (Cal.Ct.App.1945) for the proposition that statutes of limitations in insurance policies are not binding on third parties. *Olds*, however, involved liability to a third party under an automobile insurance policy. The insured was in an accident and injured a third party, who obtained a judgment against the insured and sought to enforce that judgment against the insurance company. The insurance company raised a statute of limitations defense and the *Olds* court found that the statute of limitations in the policy did not apply to the injured third party. In reaching this conclusion it relied on policy interpretation and public policy. In particular, the court noted that the policy indicated that the statute of limitations applied to actions to recover for a loss on the policy. The court reasoned that a third party's suit to enforce a judgment against an insured was not an action to recover for a loss on the policy. *See id.* at 680. Further, the court noted that the third party had no op-

portunity to participate in the underlying agreement and, therefore, should not be bound by it. *See id.* at 683.

The Court finds that *Olds* is distinguishable from the case at bar. First, the policy specially states that named mortgagees are subject to the policy. Therefore, the contract appears to be intended to apply to a party such as Bank of America. Second, Bank of America was named as a third party beneficiary at the time the contract was entered into. Bank of America should have been aware of the policy's limitations period, because the period was called for by statute. If Bank of America objected to the terms, it could have declined to lend the Tangs the money.

**2.** The policy provides:

A covered loss will be payable to the mortgagees named on the declarations page, to the extent of their interest and in the order of precedence. *All provisions of this policy apply to these mortgagees.*

ner: (a) by delaying in making their determination to pay proceeds which were clearly due to BANK OF AMERICA; (b) by failing to pay plaintiff the claim asserted.

Therefore, Bank of America's first claim arises out of the insurance policy.

Bank of America's second cause of action for breach of the covenant of good faith and fair dealing also arises out of the insurance policy. Bank of America bases this cause of action on its allegations that

> the defendants unreasonably and without proper cause failed and refused to pay the benefits of THE INSURANCE POLICY to BANK OF AMERICA as beneficiary under the Lender's Loss Payable Endorsement.

The Court therefore finds that these causes of action are subject to the one-year statute of limitations in the contract.

### b. *When did the statute of limitations accrue?*

■ The one-year statute of limitations accrues when a plaintiff has notice of information that would put a reasonable person on inquiry. *See Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 245 Cal.Rptr. 658, 751 P.2d 923, 927–28 (Cal.1988). It is generally a question of fact as to whether reasonable diligence has been exercised in discovering a claim. *See Prudential–LMI*, 274 Cal.Rptr. 387, 798 P.2d at 1238.

As discussed, the fire at the property occurred on November 21, 1993. Bank of America learned of the fire damage in 1994.

■ Allstate argues that Bank of America was on notice as of May 23, 1996 that the settlement check had been issued. In making this argument, Allstate primarily relies on three conversations: the first between Edward Elias Arciniega ("Arciniega") of Bank of America's foreclosure department and Sylvia Cruz ("Cruz") of Bank of America's insurance unit on May 23, 1996; the second between Cruz and Bob Trevor ("Trevor"), the Allstate insurance adjustor, on May 28, 1996; and the third between Trevor and Cruz on June 24, 1996.

### (1) *May 23, 1996 conversation between Arciniega and Cruz*

Allstate argues that the May 23, 1996 conversation between Arciniega and Cruz indicates that Bank of America knew or should have known that the settlement check was issued. Arciniega testified that, in this conversation, he wanted to find out if "Bank of America would be made whole by the insurance company" and the delinquent loan paid off. Cruz testified that Arciniega indicated that there could have been a settlement check issued in this matter, but he did not state when the settlement check had issued. Cruz further admits that she knew that there was a Lender's Loss Endorsement on the policy.

Bank of America argues that this exchange is ambiguous and therefore there is a triable issue of fact as to whether Bank of America was on notice of the loss on May 23, 1996.

The Court finds that the testimony regarding the conversation is ambiguous. Therefore, Allstate has not carried its burden of submitting evidence showing that there is no triable issue of fact as to whether Bank of America was on notice as of May 23, 1996.

### (2) *May 28, 1996 conversation between Trevor and Cruz*

Allstate next argues that Bank of America was put on notice by the May 28, 1996 conversation between Trevor and Cruz.

The Court finds that Allstate has presented insufficient evidence to show that there is no triable issue of fact as to this issue. The testimony regarding the conversation is ambiguous as to whether Bank of America should be on inquiry notice. Cruz indicated that in the May 28, 1996 conversation with Trevor she learned that a loss suffered by the Tangs had been settled in 1992. Cruz also indicates that the conversation raised questions as to why Bank of America did not receive the settlement check. The testimony is ambiguous, however, as to whether the settlement check at issue related to the 1992 loss or to the loss at issue in this action.

The Court therefore finds that there is a triable issue of fact as to whether Cruz was on notice of the loss alleged in this action on May 28, 1996.

*(3) June 24, 1996 conversation
between Trevor and Cruz*

In the June 24, 1996 conversation, Trevor indicated to Cruz that there was a settlement of the Tangs' claim. At that time, Cruz knew that the Tangs' policy contained a Lender's Loss Endorsement and that there had been a fire. In her deposition, Cruz claims that she did not know of the type of settlement that had been reached—for example, it could be for personal property or loss of use of the rental unit.

Bank of America argues that this conversation is ambiguous and is insufficient to establish inquiry notice.

It is undisputed that Bank of America was informed that there was a settlement, that it knew it was entitled to payment, and that it knew or should have known that it had not been paid. The Court finds that this is sufficient to alert a reasonable person of the circumstances of the loss. Bank of America has not presented any evidence showing that this conversation did not put Bank of America on notice. Therefore, the Court finds that Allstate has carried its burden of presenting evidence indicating that Bank of America was on notice of the issuance of the settlement check on June 24, 1996.

*(4) Conclusion*

Bank of America was on notice of this claim at least as of June 24, 1996. Because the one-year statute of limitations in the policy governs this claim, the statute of limitations ran on June 24, 1997. Bank of America's complaint was not filed until November 7, 1997. Therefore, unless the Court finds that the statute of limitations is tolled, these claims are time-barred.

c. *Is Allstate estopped from asserting the statute of limitations as a defense?*

*(1) Legal standard*

Just as with any statute of limitations defense, an insurer may be estopped from asserting a statute of limitations defense. *See Prudential–LMI*, 274 Cal.Rptr. 387, 798 P.2d at 1241. Under the doctrine of equitable estoppel, if an insurer leads its insured to believe that an amicable settlement may be reached, thereby delaying suit, the insurer will be estopped from asserting a defense based on the statute of limitations.

*See id.* at 1240, 274 Cal.Rptr. 387. Nonetheless, the insurer's acts done after the limitations period has expired cannot amount to estoppel. *See id.* at n. 5. The plaintiff has the burden of establishing the elements of estoppel. *See Insurance Co. of the West v. Haralambos Beverage Co.*, 195 Cal.App.3d 1308, 241 Cal.Rptr. 427, 433 (Cal.Ct.App. 1987) disapproved on other grounds in *Buss v. Superior Ct.*, 16 Cal.4th 35, 65 Cal.Rptr.2d 366, 939 P.2d 766 (Cal.1997).

California courts have stated that four elements must generally be met to establish estoppel:

(1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.

*Id.*

*(2) Application*

Here, Bank of America has presented evidence showing that Allstate requested Bank of America to refrain from filing suit because Allstate would see that Bank of America recovered the funds at issue.

*(a) The party to be estopped
must know the facts*

Here, there appears to be no question that Allstate was aware of the statute of limitations at issue.

*(b) The party to be estopped must intend
that his conduct shall be acted upon, or
must so act that the party asserting the
estoppel had a right to believe that it
was so intended*

Schumacher has declared that in April 1997, Bank of America assigned him to follow up on the claim. He contacted Dennison, an attorney representing Allstate, regarding this situation. Schumacher does not specify the date that he contacted Dennison. Schumacher has declared that Allstate indicated that it would attempt to recover from the banks that payed on the check and asked Bank of America to be patient while it sought

the return of these funds. In April 1997, Allstate requested an affidavit of forgery, and Bank of America promptly responded. On May 2, 1997, Coast Federal rejected Allstate's claim on the ground that the payee designation on the check was ambiguous. Allstate requested further information from Bank of America, and on June 3, pursuant to that request, Bank of America sent a grant deed and advised Allstate of the balance due on the loan. During June, July, and August of 1997, Bank of America and Allstate continued to cooperate to collect the amounts due from Coast Federal. During this period, Allstate continued to request that Bank of America not file suit. Schumacher also indicates that Dennison advised him "that he was endeavoring to recover the funds from Coast Federal and repeatedly assured [Schumacher] that if BANK OF AMERICA would be patient the Bank would be paid." Schumacher declares that based on these interactions, he believed that Allstate would make payment after its full investigation.

In reply, Allstate has submitted Dennison's declaration, in which Dennison declares that Schumacher did not contact him until June 1997. Dennison also declares that he never made an oral or written statement requesting that Bank of America delay filing a lawsuit. While he encouraged Schumacher to work with him in resolving the matter, this does not preclude Bank of America from filing suit. Dennison further points out that Bank of America has produced no letters memorializing an agreement. Dennison argues no letter was submitted because no letter exists.

(c) *The party asserting the estoppel must be ignorant of the true state of facts*

Schumacher's declaration indicates that Bank of America refrained from filing suit based on Allstate's assurances. This indicates that Bank of America was ignorant of the fact that Allstate did not intend to pay Bank of America following its investigation and did intend to assert the statute of limitations as a defense.

(d) *The party asserting the estoppel must rely upon the conduct to his injury*

Schumacher has declared that he delayed filing the claim in reliance on Allstate's representations.

### (3) *Conclusion*

The Court finds that Bank of America has raised a triable issue of fact as to whether the statute of limitations is tolled. Bank of America has presented evidence that Allstate indicated that it was pursuing a solution and requested that Bank of America not file suit. Bank of America has further presented evidence that it relied on this representation to its detriment.

Allstate presented declarations contradicting Bank of America's evidence. Allstate further notes that Bank of America has no letter memorializing this purported agreement, and argues that Bank of America is sufficiently sophisticated that its claim of ignorance has little credibility. These latter arguments, however, go to the weight of Bank of America's evidence. The Court's function on summary judgment is not to weigh the evidence, but to determine whether there is a genuine issue of fact for trial. *See Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505.

The Court finds that there are triable issues of fact as to the nature of Allstate's representations and whether Bank of America relied on those representations. Therefore, the Court denies summary judgment on the statute of limitations ground based on the doctrine of equitable tolling.

### 2. **Bank of America's Breach of Contract Claim**

a. *Allstate's check was properly payable to the payees jointly*

Allstate has argued that it did not breach the insurance policy because it properly wrote out the checks to the Tangs and Bank of America jointly.

Allstate argues that Bank of America's claim fails because it did not breach its contract with Bank of America when it issued the check. Allstate argues that the subject check was issued to Bank of America and the Tangs jointly, and that this complied with the terms of the underlying contract.

The Court addressed the issue of ambiguity under California Commercial Code section 3110 in its order converting Allstate's motion to dismiss to a motion for summary judg-

ment. In the papers submitted regarding that motion to dismiss, the parties did not dispute that prior to 1992, a check with a stacked payee designation was payable jointly. Bank of America, however, argued that the 1992 amendments to the Commercial Code have changed that rule. In its order converting the motion to dismiss to a motion for summary judgment, the Court outlined the applicable law, stating:

1. *U.C.C. Sections Governing the Interpretation of Instruments Payable to Two or More Persons*

 a. *The . Former Rule—Commercial Code Section 3116*

Prior to 1992, the Article 3 of the Uniform Commercial Code provided that if a check was made payable to two or more parties in the alternative (if the parties are separate by an "or"), the check could be negotiated by any one of the parties named. U.C.C. § 3–116 (*codified* at Cal. Comm.Code § 3116(a) (West 1964)). If, however, the check was *not* in the alternative, it was deemed payable to all parties and could only be negotiated if all parties endorsed it. Cal.Comm.Code § 3116(b).

In support of its argument that the check at issue here was payable in the alternative, Allstate cites a series of cases decided under former Commercial Code section 3116. These cases uniformly held that when the payees on a check are listed on separate lines, and their names are not separated by an "or," the check may only be negotiated if it is endorsed by all the named payees. *See, e.g., Moram Agencies, Inc. v. Farrell Trans., Inc.,* 35 U.C.C.Rep. Serv. 1236 (E.D.Pa.1982); *Peoples Nat'l Bank v. American Fidelity Fire Ins. Co.,* [39 Md.App. 614,] 386 A.2d 1254 (Md.Ct. Spec.App.1978); *Feldman Constr. Co. v. Union Bank,* [28 Cal.App.3d 731,] 104 Cal. Rptr. 912 (Ct.App.1972). These cases base their holdings, at least in part, on Uniform Commercial Code section 3–116, noting that the names listed on separate lines are not payable in the alternative. Therefore, under Uniform Commercial Code section 3–116(b), the checks must be endorsed by all payees. *See Moram,* 35 U.C.C.Rep. Serv. at 1238; *Peoples Nat'l Bank,* 386 A.2d at 1257; *Feldman,* 104 Cal.Rptr. at 913.

b. *1992 Amendment—Commercial Code section 3110*

In 1992, the California Commercial Code was amended to change the rule set forth in former section 3116. Under the new version of the code:

> If an instrument is payable to two or more persons alternatively, it is payable to any of them and may be negotiated, discharged, or enforced by any or all of them in possession of the instrument. If an instrument is payable to two or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them. *If an instrument payable to two or more persons is ambiguous as to whether it is payable to the persons alternatively, the instrument is payable to the persons alternatively.*

Cal.Comm.Code § 3110(d) (West Supp. 1998) (emphasis added). The Official Comments to Commercial Code section 3110 state:

> The third sentence of subsection (d) is directed to cases in which it is not clear whether an instrument is payable to multiple payees alternatively. In the case of ambiguity persons dealing with the instrument should be able to rely on the indorsement of a single payee. For example, an instrument payable to X and/or Y is treated like an instrument payable to X or Y.

U.C.C. § 3–110 cmt. 4 (West Supp.1998).

For the purposes of this motion, the key change in the amended version of this section is that, under the amended code, if an instrument is ambiguous, it is payable to the listed payees alternatively. In contrast, under the former section 3116, an instrument had to be endorsed by all parties *unless* it was in the alternative. Therefore, in the case of an ambiguity, the presumption has shifted from requiring the signature of all parties to allowing payment to any party alternatively.

Based on these cases, the Court found that prior to the 1992 amendment, the check was payable jointly. The Court converted the motion to dismiss to a motion for summary judgment and invited the parties to submit

evidence regarding any changes in banking practices after the amendment of these provisions to enable the Court to determine whether the change in the law made checks with stacked payee designations, not separated by an "and" or an "or," ambiguous and therefore payable in the alternative.

### b. *Evidence submitted regarding ambiguity*

In support of its argument that the payee designation was not ambiguous, Allstate has submitted the testimony of Mary Checchi ("Checchi"), whom Bank of America designated as the person most knowledgeable of its practices regarding instruments with multiple payees.

Checchi testified that Bank of America's policy regarding checks in which there are multiple payees, with no "and" or "or" separating them, has not changed since the Uniform Commercial Code was amended. Additionally, Bank of America's manual entitled "Acceptability of Check" provides:

> When the payee line lists two or more persons as payees and does not contain the words *and* or *or* between the names, all payees must endorse the check. For example:
>
> Roger Derr
>
> Mabel Derr

Checchi, however, also indicated that Bank of America requires all payees to endorse an ambiguous check, regardless of the changes in the Commercial Code. Allstate has also presented testimony that its practices have not changed since the amendment at issue.

In opposition, Bank of America has not pointed to any evidence showing that banking practices have changed. Prior to amending the Commercial Code in 1992, cases uniformly treated stacked payee designations as being unambiguous, and jointly payable. *See, e.g., Moram Agencies, Inc. v. Farrell Trans., Inc.,* 35 U.C.C.Rep.Serv. 1236 (E.D.Pa.1982); *Peoples Nat'l Bank v. American Fidelity Fire Ins. Co.,* 39 Md.App. 614, 386 A.2d 1254 (Md.Ct.Spec.App.1978); *Feldman Constr. Co. v. Union Bank,* 28 Cal. App.3d 731, 104 Cal.Rptr. 912 (Cal.Ct.App. 1972).

Allstate has presented evidence that financial institutions have continued to treat stacked payee designations as being unambiguous and payable jointly. Bank of America has presented no evidence to show that financial institutions' practices have changed since the amendment of the Commercial Code, thereby indicating that the amendment constituted a change in the law making stacked payee designations ambiguous. Nonetheless, the Court finds that it does not need to decide the issue of whether the check was payable jointly on this basis. As will be discussed below, the Court finds that the draft at issue here is not ambiguous. Therefore, the Court need not determine whether all checks with stacked payee designations are unambiguous.

### c. *Interpreting the draft*

#### (1) *Legal standard*

There are no disputed issues of fact regarding Allstate's intent in issuing the check—Allstate intended that the check be jointly payable to Bank of America and the Tangs. Allstate argues that on summary judgment the Court should interpret the draft as not being ambiguous.

While ambiguity in a contract raises a question of fact precluding summary judgment, *National Union Fire Ins. Co. v. Argonaut Ins. Co.,* 701 F.2d 95, 97 (9th Cir. 1983), it is a question of fact whether ambiguity in a contract is susceptible to more than one reasonable interpretation. Nonetheless, whether an ambiguity exists is a question of law for the court. *See United States v. Sacramento Municipal Util. Dist.,* 652 F.2d 1341, 1343–44 (9th Cir.1981). Further, when the nonmoving party has no evidence to support a contradictory interpretation of an instrument, summary judgment is appropriate. *See National Union,* 701 F.2d at 97.

#### (2) *Is the draft ambiguous?*

In *Feldman,* a California trial court addressed whether payees listed on separate lines were payable in the alternative. 104 Cal.Rptr. at 914. In determining that the check had to be endorsed jointly, the trial court considered the notations on the check and the type of transaction. The trial court noted that checks with the same payee designation had always been endorsed by both

parties. *See id.* Further, a bank employee indicated that she would not have taken the check without further inquiry. *See id.* The trial court therefore found that the bank that accepted the check acted negligently. *See id.* Affirming the trial court's decision, the *Feldman* court found that "there was sufficient evidence to support the trial court's findings of fact and conclusions of law that the check was payable jointly to two payees and required the endorsement on both." *Id.* at 913.

Allstate argues similarly here that examining the check in its entirety, it is not ambiguous. The check at issue was made out to

CHUK N. TANG & ROSA C. TANG, HWJT

BANK OF AMERICA

The check also indicates: "SETTLEMENT OF YOUR RENTAL DWELLING LOSS CAUSED BY FIRE ON 11/21/93." Bank of America's own witness testified that she could tell from the face of the check that it was an insurance check and that the insureds were the Tangs.

The Court finds that the draft is unambiguous. It is apparent from the face of the check that Bank of America was a third party beneficiary under a fire insurance policy and that the check is payable jointly rather than in the alternative.

Therefore, Allstate has shown that there is no triable issue of fact as to whether the draft is payable alternatively and its motion for summary judgment on this issue is granted.

### 3. *Allstate did not Breach the Contract by Delivering the Check to the Tangs*

#### a. *Contract interpretation*

Allstate contends that it was not a breach of the insurance policy to send the draft to the Tangs. Bank of America argues that Allstate breached the policy by sending the check to the Tangs. Bank of America notes that the Lender's Loss Payable Endorsement provides that "[l]oss or damage, if any, under this policy shall be paid . . . to the Payee named on the first page of this policy . . ." The first page of the policy provides that the lender will be:

BANK OF AMERICA NT & SA ITS SCCSSRS & /OR ASSGNS RL EST LN CTR 791
PO BOX 5709 # 4134
ORANGE CA 92613

Bank of America further notes that the Lender's Loss Payable Endorsement provides:

All *notices* herein provided to be given by the Company to the Lender in connection with this policy and this Lender's Loss Payable Endorsement shall be mailed to or delivered to the Lender at its office or branch described on the first page of the policy.

Bank of America argues that, taken together, these provisions indicate that Allstate was required to mail all notices and checks to Bank of America at the address on page 1. Bank of America has presented no evidence regarding custom and practice in the industry, and appears to be relying on the plain meaning of the policy.

The Court finds that the contract does not require that the check be delivered to Bank of America. While the Lender's Loss Payable Endorsement provides that the policy shall be paid out to Bank of America, the Court finds that the contract does not require that the check be delivered to Bank of America at the address on the policy. The provision relied upon by Bank of America indicates that *notices* shall be delivered to Bank of America. When the Endorsement refers to notices, it discusses notices of nonpayment of a premium by the insured. In contrast, when it refers to a check, it refers to it as a "payment." No provision in the Endorsement indicates that *payments* are to be sent directly to Bank of America.

The Court finds that the term "notice" is not ambiguous and does not include a settlement draft. Therefore, the Endorsement does not require that the check be mailed to Bank of America at the address given on the first page of the policy.

#### b. *The law regarding delivery to an agent*

Allstate argues that it is entitled to summary judgment that it did not breach the contract when it delivered the check to the Tangs. In support of this contention it relies

on a comment to the Uniform Commercial Code and the case of *Navrides v. Zurich Ins. Co.*, 5 Cal.3d 698, 97 Cal.Rptr. 309, 488 P.2d 637 (Cal.1971).

Comment 1 to California Commercial Code section 3420 provides, in part:

> The payee receives delivery when the check comes into the payee's possession, as for example when it is put into the payee's mailbox. *Delivery to an agent is delivery to the payee. If a check is payable to more than one payee, delivery to one of the payees is deemed to be delivery to all of the payees.*

Cal.Comm.Code § 3420, cmt. 1 (West Supp. 1998) (emphasis added).

Based on this comment Allstate contends that, as a matter of law, the Tangs were agents of Bank of America for purposes of the draft. Allstate then relies on the *Navrides* case for the proposition that delivery to an agent is sufficient to relieve it of its obligation. 97 Cal.Rptr. 309, 488 P.2d at 646.

In *Navrides,* an insurance company had settled a personal injury claim with the plaintiff's attorney, and issued a draft payable to the plaintiff and her attorney. The plaintiff's attorney, however, had forged the plaintiff's signature on the settlement agreement. The attorney further forged the plaintiff's signature on the draft and appropriated the proceeds of settlement without informing the plaintiff. *See id.* at 639, 97 Cal.Rptr. 309.

The *Navrides* court relied on two facts to hold that the insurance company was not liable to the plaintiff for delivering the settlement check to her attorney. First, the court noted that, under the California Code of Civil Procedure, an attorney has authority to accept checks on his client's behalf. *See id.* at 642, 97 Cal.Rptr. 309. Second, the court looked to the law of agency, and reasoned that when a debtor makes a check payable to an agent authorized to collect that debt for the principal, the debt is discharged. *See id.* at 646, 97 Cal.Rptr. 309.

The *Navrides* court noted that Section 178(2) of the Restatement Second of Agency provided that " 'If an agent who is authorized to receive a check payable to the principal as conditional payment forges the principal's endorsement to such a check, the maker is relieved of liability to the principal if the

drawee bank pays the check and charges the amount to the maker.' " *Id.* Further, the *Navrides* court noted that

> Comment (c) on subsection (2) [of the Restatement] states: "If a debtor, having an account at a solvent bank sufficient to pay a check, gives to an authorized agent a check payable to the principal in accordance with business customs as conditional payment, he has performed his obligation, and any loss caused by delay because of the conduct of the agent is at the creditor's risk. Thus, if the drawee bank cashes the check after a forgery and embezzlement by the agent and charges the amount to the debtor, the latter is relieved of his debt. The creditor then would be subrogated to the right of the debtor against the bank. If, in the meantime, the bank becomes insolvent, it is the creditor and not the debtor who loses."

*Id.*

Therefore, the *Navrides* court held that the delivery of a settlement check to the plaintiff's attorney discharged the insurance company's debt.

 The Court finds that, as joint payees, the Tangs are Bank of America's agents for the purposes of the check. *See* Cal.Comm.Code § 3420, cmt. 1 ("If a check is payable to more than one payee, delivery to one of the payees is deemed to be delivery to all of the payees."). Here, as in *Navrides,* the check was delivered to the plaintiff's agents. Further, the policy considerations discussed by the *Navrides* court appear to be equally applicable here. Therefore, the Court finds that delivery of the check to the Tangs was not a breach of the insurance policy.

Conclusion

The Court grants summary judgment in favor of Allstate on its cause of action for breach of contract. The Court finds that the check was not ambiguous and was issued jointly to Bank of America and the Tangs. Further, the Court finds that delivery to the Tangs was proper, because for the purposes of the settlement draft, they were the agents of Bank of America.

### 4. *Bank of America's Second Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing*

#### a. *Legal standard*

Erroneous denial of a claim does not by itself constitute a breach of the implied covenant of good faith and fair dealing. To establish bad faith liability, the insured must show that 1) the insurer withheld benefits due under the contract, and 2) such withholding was unreasonable under the circumstances. *See Austero v. National Cas. Co.,* 84 Cal.App.3d 1, 148 Cal.Rptr. 653, 669 (Cal. Ct.App.1978) disapproved on other grounds in *Egan v. Mutual of Omaha Ins. Co.,* 24 Cal.3d 809, 169 Cal.Rptr. 691, 620 P.2d 141 (Cal.1979).

The Court has granted summary judgment in favor of Allstate on its claim for breach of contract. Therefore, the Court finds that there is no triable issue of fact as to whether Allstate withheld benefits due under the contract.

Additionally, the test for bad faith is whether the insurer's conduct was unreasonable. *See Austero,* 148 Cal.Rptr. at 669. If there is a genuine issue as to the insurer's liability under California law, bad faith liability cannot be imposed. *See Safeco Ins. Co. of America v. Guyton,* 692 F.2d 551, 557 (9th Cir.1982). Here, the Court has found that the check was unambiguous and payable jointly. The Court has further found that Allstate is not liable to Bank of America for the benefits due under the policy.

Therefore, there is no triable issue of fact as to whether Allstate's acts were reasonable. The Court grants summary judgment as to Bank of America's bad faith claims. Because the Court has granted summary judgment as to all of Bank of America's claims, it also grants summary judgment as to Bank of America's claim for punitive damages.

### 5. *Conclusion*

The Court grants Allstate's motion for summary judgment. The Court finds that Allstate did not breach its contract with Bank of America, and that its failure to pay Bank of America after the initial settlement draft was forged was not in bad faith.

### C. *Bank of America's Motion for Summary Judgment*

In its motion for summary judgment, Bank of America makes four primary arguments. First, it argues that it is entitled to summary judgment as to the settlement draft payable to the Tangs and Bank of America because the draft was ambiguous and Allstate was negligent in issuing it. Second, Bank of America argues that it was entitled to summary judgment as to an additional draft payable to the Tangs for reimbursement for rents lost due to the fire. Third, it argues that the payout on the forged draft does not relieve Allstate of its obligation. Fourth, Bank of America argues that it is entitled to sue on the settlement drafts. Additionally, Bank of America is seeking attorney's fees under Insurance Code section 1619.

### 1. *Allstate's Alleged Breach of Contract/Negligence in Issuing the Settlement Check*

Bank of America argues that it is entitled to summary judgment because Allstate negligently drafted the settlement check in an ambiguous manner.

As discussed above, the Court granted summary judgment in favor of Allstate on the issue of breach of contract and negligence in issuing the settlement check. Therefore, the Court denies Bank of America's motion for summary judgment on this issue.

### 2. *The Draft Issued for Rents*

In the course of discovery, Bank of America learned of two additional drafts written out to the Tangs. First, Allstate issued a check for clearing debris in the amount of $1,941.31 to:

Cal West Construction and Development
Chuk N. Tang

Bank of America conceded that the check was properly payable to Cal West Construction and Development for clearing debris, and appears to have been properly drawn. Therefore, Bank of America is making no claim as to this draft.

Bank of America also learned of a check in the amount of $12,350 payable to the

Tangs for lost rents. While Bank of America did not plead that it was entitled to this check in its complaint, it now contends that it was entitled to the proceeds of this check. In so arguing, Bank of America notes that, under the deed of trust to the subject property, the Tangs assigned to Bank of America the rents to the property as security for the loan. Bank of America further notes that the insurance policy provides that any loss or damage under the policy is to be paid to Bank of America. Based on these provisions, Bank of America argues that it is entitled to the insurance check for lost rents.

It is clear that Bank of America had the right to collect the rents on the property under the deed of trust. Allstate, however, argues that this does not entitle Bank of America to collect the insurance proceeds for lost rents. Allstate notes that the Deed of Trust requires the Tangs to maintain "insurance against loss by fire and other hazards, casualties, and contingencies including war damage," but does not require insurance for lost rents. Allstate argues that because the Tangs' insurance coverage for lost rents was in addition to the coverage required by Bank of America, the Lender's Loss Payable Endorsement does not encompass this coverage.

The Court finds that Allstate has raised a triable issue of fact as to whether Bank of America is entitled to the check for lost rents. At the least, the Lender's Loss Payable Endorsement is ambiguous as to whether it includes lost rents. Insurance covering lost rents covers prospective damage. The damage encompassed by the Endorsement appears to be replacement value of property lost or damaged as the result of a fire, or similar casualty, rather than lost profits that are a consequence of that damage. Additionally, the Tangs were not required to purchase insurance for lost rents; therefore, it appears that coverage for lost rents was beyond the scope of Bank of America's lien.

Therefore, the Court finds that Bank of America has not shown that there is no triable issue of fact as to whether it is entitled to insurance payments for lost rents and denies Bank of America's motion for summary judgment on this issue.

### 3. *Is Allstate Still Obligated to Pay Under the Contract?*

■ Bank of America argues that because it never received payment on its check, under Article 3 of the Commercial Code, it may sue on the underlying obligation.

Bank of America relies on Commercial Code sections 3310 and 3414 to support its argument that it can sue on the underlying obligation based on the fact that it did not receive payment on the check. While section 3310(b)(3) provides for enforcement of either an instrument or the underlying obligation in certain circumstances, when an endorsement has been forged and the check cashed, it limits a payee's rights against a drawer to an action on the instrument.[3] Pursuant to section 3310's comments, however, when a check is stolen, the payee's signature forged, and the check payed out on the forged endorsement,

> [t]he payee's cause of action is against the depositary or payor bank in conversion under Section 3–420 *or against the drawer under Section 3–309.* In the latter case, the drawer's obligation under Section 3–414(b) is triggered by dishonor which occurs because the check is unpaid.

Cal.Comm.Code § 3310, cmt. 4 (emphasis added). These comments indicate that in a situation such as the case at bar, the drafters intended that a payee's claim against a drawer under section 3310 be brought under section 3309. The Code provides, however, that an action brought under section 3309 is an action on the instrument, not the underlying obligation. *See* 2 James J. White & Robert S. Summers, *Uniform Commercial Code* § 18–3, at 213 (4th ed.1995).

---

**3.** Section 3310(b)(3) indicates that "[e]xcept as provided in paragraph (4)," a person may enforce the instrument or the underlying obligation. Section 3310(b)(4) limits the payee's rights when it provides:

 If the obligee is the person entitled to enforce the instrument but no longer has possession of it because it was lost, stolen, or destroyed, the obligation may not be enforced to the extent of the amount payable on the instrument, and to that extent *the obligee's rights against the obligor are limited to enforcement of the instrument.* Cal.Comm.Code § 3310(b)(4).

Bank of America has therefore cited no section of the Commercial Code that provides for a suit on the underlying contract when, as here, a check has been cashed by someone not authorized to negotiate the check. Therefore, the Court finds that Bank of America has raised no triable issue of fact as to its motion for summary judgment on the underlying obligation and denies its motion for summary judgment on the obligation.

### 4. Can Bank of America Sue on the Settlement Draft?

Bank of America next argues that it is entitled to sue on a settlement draft under California Commercial Code section 3310(b). While Bank of America has not pleaded a cause of action on the instrument, the Court will address these issues.

#### a. *Statutory structure for a suit against a drawer of a check*

Commercial Code section 3310(b) provides that when payment for an obligation is made by check, that obligation is suspended. When the check is paid, the obligation is discharged. *See* Cal.Comm.Code § 3310(b)(1). In contrast, when a person entitled to enforce an obligation no longer has possession of a check, that person's remedies against the drawer of the check are limited to an action on the instrument. *See* Cal.Comm.Code § 3301(b)(4) & cmt. 4. Bank of America no longer has possession of the check, therefore it is limited to an action on the instrument under section 3309.

The comments address a situation analogous to the situation here:

If the payor bank pays a person not entitled to enforce the instrument ... the suspension of the underlying obligation continues because the check has not been paid. Section 3–602(a). The payee's cause of action is against the depositary bank or payor bank in conversion under Section 3–420 *or against the drawer under Section 3–309*. In the latter case, the drawer's obligation under Section 3–414(b) is triggered by dishonor which occurs because the check is unpaid. Presentment for payment to the drawee is excused under Section 3–504(a)(i) and, under Section 3–502(e), dishonor occurs without presentment if the check is not paid. *The payee cannot merely ignore the instrument and*

*sue the drawer on the underlying contract. This would impose on the drawer the risk that the check when stolen was indorsed in blank or to bearer.*

Cal.Comm.Code § 3310, cmt. 4 (emphasis added).

Therefore, a payee such as Bank of America may enforce the instrument against the drawer (Allstate). This comment indicates that the only action that the payee has against the drawer is an action on the instrument brought under section 3309.

Section 3309 provides:

A person not in possession of an instrument is entitled to enforce the instrument if (1) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (2) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (3) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

Cal.Comm.Code § 3309.

#### b. *Application*

Allstate argues that Bank of America is not entitled to enforce the instrument because Bank of America does not meet the requirements of provisions (1) and (3) of section 3309.

Allstate argues that Bank of America has pleaded that it was not in possession of the instrument, therefore, it does not meet the requirements of section 3309(a)(1). The Court finds that Bank of America has met this element because the comment to the Uniform Commercial Code makes it clear that "delivery of a check to an agent for the payee is delivery to the payee" for the purposes of a conversion action. 2 White & Summers, *supra*, § 18–4, at 221. Therefore, for purposes of Article 3, the check was delivered to Bank of America when it was delivered to the Tangs, and Bank of America was in constructive possession of the check.

■ The Court finds, however, that Bank of America does not meet the third requirements of section 3309(a)—that the instrument was destroyed, its whereabouts cannot be determined or it is in the wrongful possession of a person that cannot be found or is not amenable to service of process. The instrument in question was not lost or destroyed—it was cashed. Further, there is no showing that the Tangs cannot be found or served.

Therefore, Bank of America has not shown that it is entitled to maintain an action against Allstate under section 3309. Further, Bank of America has not directed the Court to another provision in Article 3 of the Commercial Code that permits a payee to sue a drawer of a check.

The Court finds that Bank of America has not raised a triable issue of fact that it is entitled to prevail against Allstate in an action on the instrument. Therefore, the Court denies Bank of America's motion for summary judgment on this issue.

### 5. *Attorney's Fees Under California Insurance Code Section 1619*

Bank of America has also moved for summary judgment as to its right to attorney's fees under California Insurance Code section 1619. The Court has denied Bank of America's motion for summary judgment. Bank of America has cited no authority providing that fees be awarded to the losing party. Therefore, the Court denies Bank of America's motion for attorney's fees.

### *CONCLUSION*

The Court grants Allstate's motion for summary judgment as to Bank of America's claims for breach of contract and bad faith. The Court denies Bank of America's motion for summary judgment.

IT IS SO ORDERED.