656 P.2d 631

## Peter M. MILLER,
Plaintiff/Counterdefendant/Appellant,

v.

## FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver of Southwestern Bank, an Arizona corporation, Defendant/Counterclaimant/Appellee.

### No. 2 CA–CIV 4137.

Court of Appeals of Arizona, Division 2.

Oct. 7, 1982.

Rehearing Denied Nov. 18, 1982.

Review Denied Jan. 5, 1983.

Johnston & Grynkewich by Gary S. Grynkewich, Tucson, for plaintiff/counterdefendant/appellant.

Joseph R. McDonald, P.C. by Joseph R. McDonald, Tucson, for defendant/counterclaimant/appellee.

---

OPINION

HOWARD, Chief Judge.

The determinative issue in this case is whether a collecting bank breaches its warranty of good title when it presents a check to a payor bank for settlement which has a missing endorsement. We conclude that it does and affirm.

Peter Miller owned a service station in Marana, Arizona. He replaced the engine in a motor home belonging to Doris Strahl. He charged her $2,500, she gave him a check for $3,000 and he gave her $500 change. The check was payable to the order of Doris Strahl but she never endorsed it. The drawer of the check was Pacific First Federal Savings and Loan Association and the drawee was Puget Sound National Bank (Puget Sound). On March 22, 1979, Miller deposited the check in his business account with appellee, Southwestern Bank (Southwestern) which sent it for payment to Puget Sound. The check was returned to Southwestern on May 17, 1979 which resubmitted the check on June 25 because it was Southwestern's opinion that Puget Sound had returned the check after Puget Sound's "midnight deadline."[1]

Puget Sound replied that its midnight deadline did not apply because the absence of an endorsement by the payee, Doris Strahl, constituted a breach by Southwestern of its presentment warranty. It also furnished Southwestern with an affidavit of forgery signed by Doris Strahl who stated that she did not endorse the check and that her signature was a forgery. Puget Sound refused to honor the check and on August 8, 1979, Southwestern charged back Miller's account. In the meantime, Miller had written checks on his account which resulted in his being overdrawn in the sum of $1,005.38.

Miller brought an action in the superior court for wrongful dishonor of the check and Southwestern counterclaimed for the $1,005.38. The case was first heard by an arbitrator who gave an award to Miller.

The bank appealed the arbitration award to the superior court which awarded the bank its $1,005.38 and found against Miller on the wrongful dishonor. This appeal followed.

■ Miller contends that under the Uniform Commercial Code, Puget Sound's failure to dishonor the check prior to the midnight deadline precluded Southwestern from charging back the provisional credit that it gave to Miller. Southwestern contends (1) it had an agreement with Miller which made inapplicable the Uniform Commercial Code provisions regarding the midnight deadline and (2) that both Miller and Southwestern breached their warranty of good title, thus rendering the provisions concerning the midnight deadline inapplicable.

THE DEPOSIT AGREEMENT

A.R.S. § 44–2610(A) states:

"Unless a contrary intent clearly appears and prior to the time that a settlement given by a collecting bank for an item is or becomes final (subsection C of § 44–2620 and §§ 44–2621 and 44–2622) the bank is an agent or sub-agent of the owner of the item and any settlement given for the item is provisional...."

The deposit agreement entered into between Miller and Southwestern contains the following language:

"In receiving items for deposit or collection, including items received as payments of collections, Bank acts as Depositor's collecting agent only.... *All items are credited or cashed by bank subject to final payment to Bank in cash or solvent credits.*" (Emphasis added)

Citing A.R.S. § 44–2603(A) and (B) which allow provisions of the UCC to be varied by the parties except for certain instances which are not applicable here, Southwestern contends the deposit agreement operates to change the code provisions relating to midnight deadlines and that it has the right to charge back items at any time. We do not agree. The deposit agreement mere-

1. "Midnight deadline" is midnight on the next banking day following the banking day on which it receives the relevant item. A.R.S. § 44–2604(A)(8).

ly restates the code. The emphasized portion is a restatement of §§ 4–213(2) and (3) of the Uniform Commercial Code (A.R.S. § 44–2622(B) and (C). White and Summers, Uniform Commercial Code, 2nd Ed., at 651, fn. 10.[2]

## THE MIDNIGHT DEADLINE

■ A.R.S. § 44–2625 concerns Puget Sound's responsibility for the late return of the check. It states:

"In the absence of a valid defense such as breach of a presentment warranty (subsection A of § 44–2616), settlement effected or the like, if an item is presented on and received by a payor bank the bank is accountable for the amount of:

1. A demand item . . . whether properly payable or not if the bank, in any case where it is not also the depositary bank, retains the item beyond midnight of the banking day of receipt without settling for it or, regardless of whether it is also the depositary bank, does not pay or return the item or send notice of dishonor until after its midnight deadline; . . ."

If the payor banks fails to revoke the provisional settlement before the midnight deadline, the item is deemed to have been finally paid, A.R.S. § 44–2622(A)(4), unless there is a breach of presentment warranty or some other valid defense. If the payment was deemed final, then Puget Sound could not refuse payment of the item and the depositary bank, Southwestern, could not charge back the item against Miller's account. A.R.S. § 44–2621(A).

Southwestern contends that Puget Sound's failure to dishonor the check prior to its midnight deadline resulted in a final payment. Puget Sound disagrees and contends that there was no final payment be-

cause there was breach of the presentment warranty of "good title." See A.R.S. § 44–2616(B)(1).

Before discussing the warranty of good title, we summarily dismiss the relevancy of the affidavit of forgery submitted by Doris Strahl. Since she never signed the check her affidavit is meaningless. There was no forgery.

The purpose of the warranty of good title is to speed up the collection and transfer of checks and to take the burden off each bank to meticulously check the endorsement of each item transferred. *Sun'n Sand, Inc. v. United California Bank,* 21 Cal.3d 671, 148 Cal.Rptr. 329, 582 P.2d 920 (1978). "The theory is that the first bank in the chain has the duty to make certain all endorsements are valid; banks subsequently taking the paper have a right to rely on the forwarding bank." *Feldman Construction Company v. Union Bank,* 28 Cal.App.3d 731, 104 Cal.Rptr. 912, 914–15 (1972). The warranty of good title involves a very limited inquiry: ". . . does the instrument presented contain all necessary endorsements and are such endorsements genuine or otherwise deemed effective?" *Sun'n Sand, Inc. v. United California Bank,* supra, 148 Cal. Rptr. at 340, 582 P.2d at 931.

Was the endorsement of Doris Strahl necessary? A.R.S. § 44–2523(C) provides:

"Unless otherwise agreed any transfer for value of an instrument not then payable to the bearer gives the transferee the specifically enforceable right to have the unqualified indorsement of the transferor. Negotiation takes effect only when the indorsement is made and until that time there is no presumption that the transferee is the owner."

**2.** A.R.S. § 44–2622(B) and (C) states:

"B. If provisional settlement for an item between the presenting and payor banks is made through a clearing house or by debits or credits in an account between them, then to the extent that provisional debits or credits for the item are entered in accounts between the presenting and payor banks or between the presenting and successive prior collecting banks seriatim, they become final

upon final payment of the item by the payor bank.

C. If a collecting bank receives a settlement for an item which is or becomes final (subsection C or § 44–2620, subsection B of § 44–2622) the bank is accountable to its customer for the amount of the item and any provisional credit given for the item in an account with its customer becomes final."

Since the check here was payable to order, the foregoing statute applies and the endorsement of Doris Strahl was necessary in order to negotiate it. We conclude that it was a necessary endorsement and that there was a breach of the warranty of good title which allowed Puget Sound to revoke its settlement after the midnight deadline and which allowed Southwestern, in turn, to charge back the provisional credit it gave Miller.

Affirmed.

HATHAWAY and BIRDSALL, JJ., concur.