OPINION
Plaintiff-appellant First National Bank and Trust Company of the Treasure Coast appeals the decision of the Belmont County Common Pleas Court which granted summary judgment in favor of defendant-appellee Belmont National Bank. For the following reasons, the trial court's judgment is affirmed.
 STATEMENT OF FACTS
The parties stipulated to the facts of the case. In the spring of 1997, Clifford Lowe approached Belmont National for a loan in order to purchase a vehicle from Heritage R.V. Center, Inc., a dealership in Florida. Part of the loan was to be used to pay off a company that had a lien on his old vehicle which he was going to use as a trade-in.
On April 7, 1997, Belmont National issued a check for $68,000 payable jointly to Heritage "and" Mr. Lowe and mailed the check to Heritage. Heritage, who was making the requested modifications to the vehicle, was to have Mr. Lowe endorse the check at the time of delivery and then pay off certain lienholders. Instead, Heritage immediately endorsed and deposited the check in its checking account at First National.
Despite the fact that the check was missing the endorsement of Mr. Lowe, First National credited Heritage's account, permitted Heritage to draw on the funds and transmitted the check through the Federal Reserve System to Belmont National for payment. Belmont National received the check on April 17, 1997.
On May 15, 1997, Heritage delivered the vehicle to Mr. Lowe and took possession of the trade-in. However, Heritage failed to pay off the lienholder on the trade-in and failed to pay its own lienholder on the new vehicle. On May 29, 1997, Heritage filed for bankruptcy.
When Belmont National failed to receive the Manufacturer's Statement of Origin on the new vehicle from Heritage, it investigated on June 5, 1997 and discovered the bankruptcy case. Thus, on June 6, Belmont National returned the check with the missing endorsement to First National. First National presented the check again and Belmont National returned it again. First National then attempted to recover the funds from Heritage's account, but the account funds had been depleted.
In the meantime, the lienholder of the new vehicle called Belmont National and stated that it had possession of the Manufacturer's Statement of Origin and that it would accept payment on the same terms that Heritage originally offered to Mr. Lowe. Hence, Belmont National disbursed Mr. Lowe's $68,000 loan to the lienholder of the new vehicle and the lienholder of the trade-in. The results are that Heritage received $68,000 to which it was not entitled and then declared bankruptcy, and First National suffered a loss of $68,000.
On July 2, 1998, First National filed a complaint against Belmont National. The cause of action was based on R.C. 1304.28 for a failure to meet the midnight deadline and/or on a section of the Code of Federal Regulations dealing with the expeditious return rule. After the stipulation of facts was filed, both parties moved for summary judgment. The trial court granted summary judgment in favor of Belmont National stating that Belmont National's defense to its failure to meet its midnight deadline was that First National breached its warranty of good title by presenting a check with a missing endorsement. The court noted that First National occupied the best position from which to spot and avoid the loss. The within timely appeal followed.
 ASSIGNMENTS OF ERROR
First National's sole assignment of error provides:
 "THE LOWER COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF BELMONT NATIONAL BANK. BELMONT NATIONAL HAD A DUTY TO COMPLY WITH THE MIDNIGHT DEADLINE, AND THE BREACH OF WARRANTY [BY FIRST NATIONAL] DID NOT EXTINGUISH APPELLEE'S [BELMONT NATIONAL'S] OBLIGATION UNDER THE STATUTE AND FEDERAL REGULATIONS."
First National argues that Belmont National's untimely return of the check, beyond its midnight deadline, resulted in the provisional settlement with Heritage to become final, thus making Belmont National liable for the amount of the check. It is alleged that Belmont National may not raise a breach of warranty defense to avoid liability for failure to meet its midnight deadline. In support of this allegation, First National contends that an element of a breach of warranty cause of action is that the bank paid the check to the presenter and thus a breach of warranty did not occur because Belmont National returned the check without paying it.
 LAW
Belmont National is the drawee or payor bank and is also the drawer of the check. R.C. 1303.01(A)(2) and (3); R.C. 1304.01(A) (8) and (B)(3). First National is the depositary bank. R.C. 1304.01(B)(2). Mr. Lowe and Heritage are joint payees on a two-party check. A two-party check, one that is made out to two payees and uses the word "and" between the payees' names, must be endorsed by both payees in order to be negotiated. R.C. 1303.08 (D). See, also, Cincinnati Ins. Co. v. First Natl. Bank
(1980), 63 Ohio St.2d 220, 224 (holding that if a signature of a copayee is missing, then the check is not properly payable).
When a depositary bank attempts to receive funds from a payor bank, the depositary becomes and sometimes uses a collecting bank. R.C. 1304.01(B)(4) and (5). The process of attempting to receive funds on a check from a payor bank is presentment, i.e. a demand made to the drawee by or on behalf of a person entitled to enforce the check. R.C. 1304.01(C)(8). The entity presenting the check and previous transferors make certain presentment warranties to the payor bank which will be discussed infra.
Upon presentment, the payor bank must act in a timely manner to avoid finally paying the check. A check is finally paid by a payor bank when the bank makes a provisional settlement and fails to timely revoke the settlement. R.C. 1304.25(A)(3) and (C). Therefore, delay is tantamount to final payment. Specifically, the payor bank is accountable for the amount of the presented check, whether properly payable or not, if the bank retains the check beyond midnight of the banking day of receipt without settling for it or does not pay or return the check or send notice of its dishonor until after its midnight deadline. R.C. 1304.28 (A)(1). The midnight deadline is midnight of the banking day following the banking day on which the bank receives the check. R.C. 1304.01(A)(10). A bank may return a presented check for lack of a necessary endorsement without actually dishonoring the check. R.C. 1303.61(B)(3). It is basically conceded that Belmont National returned the check for lack of a necessary endorsement after its midnight deadline.
Although R.C. 1304.28(A)(1) imposes liability on the payor bank for the full amount of the check where it fails to return the check by its midnight deadline, R.C. 1304.28(B) provides:
 "The liability of a payor bank to pay an item pursuant to division (A) of this section is subject to defenses based on breach of presentment warranty * * *."
Thus, the payor bank is not liable to pay an item returned after its midnight deadline as provided in R.C. 1304.18 or under Regulation CC[1]
if the bank has a defense based on breach of a presentment warranty. SeeFerrell, Baldwin's Ohio Practice, Commercial Code (1996) 715, Section 30.12.
A cause of action for breach of a presentment warranty is contained in R.C. 1304.18, which sets forth the following pertinent warranty:
 "(A) If an unaccepted draft is presented to the drawee for payment or acceptance and the drawee pays or accepts the draft, the person obtaining payment or acceptance, at the time of presentment, and a previous transferor of the draft, at the time of transfer, warrant all of the following to the drawee that pays or accepts the draft in good faith:
 (1) The warrantor is, or was, at the time the warrantor transferred the draft, a person entitled to enforce the draft or authorized to obtain payment or acceptance of the draft on behalf of a person entitled to enforce the draft." See, also, R.C. 1303.57(A)(1).
Pursuant to the Official Comment to section 3-417 of the Uniform Commercial Code, from which the Ohio Revised Code patterns its presentment warranty section, "Subsection (a)(1) in effect is a warranty that there are no unauthorized or missing endorsements." Because the check presented to Belmont National was not endorsed by both payees, it had missing endorsements. R.C. 1303.08(D). Accordingly, no one, neither Heritage nor First National, was entitled to enforce the check[2]. Id. Because First National was not entitled to enforce the check, it breached the first presentment warranty, also known as the warranty of good title.[3]
Nonetheless, First National reads the language of R.C. 1304.18(A) or1303.57(A) and argues that a breach of presentment warranty only occurs where the payor bank pays the check. Because Belmont National did not pay the check but rather returned it unpaid, First National claims that a breach of presentment warranty did not occur. Essentially, First National's argument provides that Belmont National should have paid the check and then sued First National for breach of presentment warranty to recover its loss.
First of all, this logic is circular. Secondly, R.C. 1304.28 (A)(1) specifically states that the payor is accountable for the check if it "does not pay or return the item or send notice of dishonor until after its midnight deadline." Likewise, the exception to the payor bank's accountability for breaching a midnight deadline provides that the liability of the payor for failing to return a check in a timely fashion is "subject to defenses based on breach of presentment warranty." R.C.1304.28 (B). The plain language allows a defense based on breach of presentment warranty even if the payor bank does not pay the item but instead returns the item or sends a notice of dishonor.
Although R.C. 1304.18(A) contains the phrase "and the drawee pays or accepts the draft," this statute sets forth a cause of action as to when the payor bank can sue to recover from the presenter and prior transferors. Conversely, R.C. 1304.28 says that there is a defense basedon a breach of presentment warranty. We note the significance of the words "based on." Moreover, because it is a defense, there logically could not have been any payment by the payor. This is because a payor would only use a "defense based on a breach of presentment warranty" if it were sued for nonpayment. If the payor paid, then it would not get sued and would not need a defense. See, also, the Comment contained in Appendix E to Section 229.30(a), Title 12, C.F.R., which provides, "a paying bank is not responsible for failure to make expeditious return to a party that has breached a presentment warranty under 4-208 [Uniform Commercial Code version of R.C. 1304.18], notwithstanding that the payingbank has returned the check."
Accordingly, the trial court properly held that First National's cause of action for Belmont National's violation of the midnight deadline was barred by Belmont National's statutory defense based on First National's breach of a presentment warranty. Hence, summary judgment was properly granted for Belmont National.
For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Cox, P.J., concurs, Donofrio, J., concurs.
[1] Regulation CC, contained in Section 229, Title 12 of the Code of Federal Regulations, sets forth a rule of expeditious return which requires the payor bank to return a check or give notice of nonpayment within certain time frames. Sections 229.30 (a)(1) and 229.33(a). Although these time frames are longer than the midnight deadline contained in the Ohio Revised Code, Belmont National still violated the deadlines. However, as provided in Appendix E to Section 229.30(a) and 229.33(a), "a paying bank is not responsible for failure to make expeditious return to a party that has breached a presentment warranty under 4-208 [Uniform Commercial Code version of R.C. 1304.18] * * *."
[2] Contrary to appellant's suggestion, the check was never "negotiated." Because the check was payable to the order of joint payees, its transfer could not result in negotiation without the endorsement of both payees. R.C. 1303.08(D) and 1303.21(B). Without negotiation, First National failed to become a holder. R.C. 1303.21(A). Even under the basic transfer principles, First National attained only the rights of Heritage as the transferee, and Heritage, as a copayee acting alone, was not entitled to enforce the check. R.C. 1303.22(B); Official Comment to UCC 3-110 and R.C. 1303.08(D). As such, First National was neither a holder nor a nonholder in possession with rights of a holder, and thus, First National was not a party entitled to enforce the check. R.C. 1303.31(A)(1) and (2).
[3] "[P]resentation of check without endorsement to drawee bank was a breach of warranty of good title allowing drawee bank to revoke its settlement after the midnight deadline * * *."
Miller v. Fed. Dep. Ins. Corp. (1982 Ariz. App.), 656 P.2d 631, 632,634. "An untimely return of a check may be excused where a faulty endorsement breaches the presentment warranty of good title. However, the warranty is breached only if an endorsement has been forged or is missing, unauthorized or ineffective." Chew-Bittle Assoc. v. CrusaderSav. Bank (1993 Pa. Super.), 635 A.2d 653, 656.